## Appeal of GUDE BROTHERS, KIEFFER CO.

Docket No. 3273. Submitted July 2, 1925. Decided October 27, 1925.

1. The taxpayer set up certain reserves which it undertook to deduct from the taxable income for the year in which they were set up. *Held*, that the deduction could not be allowed in such year.

2. The taxpayer purchased certain property in 1917 which it ceased to use during the taxable year, sold a portion thereof and charged the balance to loss. *Held*, in the absence of proof of cost of the portion sold, that the transaction was not closed until all the property was finally disposed of in a later year and no deduction is allowable in the taxable year.

3. The taxpayer purchased certain property which it appraised during the taxable year at less than its cost. *Held*, that the difference could not be charged off as a loss.

4. The taxpayer made certain expenditures. No evidence having been submitted that such expenditures were for repairs, *held*, that the determination of the Commissioner that they were for improvements must be approved.

*Lee I. Park, Esq.*, for the Commissioner.

Before JAMES, LITTLETON, SMITH, and TRUSSELL.

This is an appeal from the determination of a deficiency in income and profits tax for the fiscal year ended February 28, 1919, in the amount of $10,068.43. The deficiency letter sets forth over-assessments for the years ended February 29, 1920, and February 28, 1921, in a total amount of $2,133.30, but neither the petition of the taxpayer nor the answer of the Commissioner brings these years into issue.

### FINDINGS OF FACT.

The taxpayer is a New York corporation with its principal office in New York City.

At the close of the year 1919 the taxpayer set up a reserve of $2,463.12 for a legal fee expected to be paid thereafter in connection with litigation over a contract made with an employee at the beginning of the year for payment of a certain portion of the net profits of the company as additional compensation.

During the year 1919 the taxpayer expended for concrete flooring $299.12, and for plumbing $652.52.

In April, 1917, the taxpayer purchased a creamery at Cedar Grove, Iowa, for $6,500, which was operated until some time during the year under consideration, when operations ceased because the creamery had been found to be unprofitable. Part of the equipment

was sold at the time for $1,629.68, and an offer of $1,000 was obtained for the remainder of it. The remaining portion was not sold at that time, however, but was held until 1920 when it was sold for $1,367.92.

At the close of the fiscal year 1919 an expert appraiser appraised certain wagons and auto trucks belonging to the taxpayer at $6,108.37, less than the value at which they were carried on the books, and this difference was charged to an extraordinary depreciation account.

### DECISION.

The determination of the Commissioner is approved.

### OPINION.

JAMES: The taxpayer claims the allowance of a reserve for anticipated legal expenses. Reserves are not allowable deductions from gross income, except where explicitly so provided by the statute. *Appeal of William J. Ostheimer*, 1 B. T. A. 18; *Appeal of Consolidated Asphalt Co.*, 1 B. T. A. 79; *Appeal of Uvalde Co.*, 1 B. T. A. 932; *Appeal of Morrison-Ricker Mfg. Co.*, 2 B. T. A. 1008.

The taxpayer claims a deduction on account of certain concrete flooring and plumbing apparently put in its building during the taxable year. The petition contains allegations of fact which if true would seem to indicate that the facilities so placed in the building might be subject to amortization as war facilities. The taxpayer, however, contented itself with stipulating that certain facts set forth in a certain letter of the Bureau of Internal Revenue should be accepted as the facts in the appeal. That letter contains no statement concerning the nature of these improvements, and, under the facts of record, the determination of the Commissioner must be approved.

What is stated above with respect to concrete flooring and plumbing applies also to the creamery purchased at Eagle Grove, Iowa, if all the facts alleged in the taxpayer's petition were in evidence. Under the facts which are in evidence, the position taken by the Commissioner is manifestly correct, namely, that the loss on the transaction was realized only when the property was disposed of.

The above statement is also true of the last item representing the extraordinary depreciation on horses, wagons, and automobiles.

The taxpayer in this appeal, as to the two principal items of deductions other than the extraordinary depreciation apparently received credit, first for the legal expenses in a later year, and second for the loss on the Eagle Grove Creamery in 1920, in which year the Commissioner's deficiency letter indicates that an overassessment was credited.